**George GOFF, Appellee,**

v.

**Crispus NIX, Warden; Hal Farrier, Director of Corrections; Kurt Gary, Correctional Officer; Correctional Officer Matlock, Appellants.**

**Nos. 84–1416, 85–1119.**

United States Court of Appeals, Eighth Circuit.

Jan. 16, 1987.

As Amended Jan. 20, 1987.

Barbara Schwartz & Steven Kraft, Prisoner Assistance Clinic, College of Law, University of Iowa, Iowa City, Iowa, for appellee.

Thomas Miller, Atty. Gen., Gordon E. Allen and John Parmeter, Des Moines, Iowa, for appellants.

**ORDER DENYING PETITION FOR REHEARING EN BANC.**

The petition for rehearing and suggestion for rehearing en banc is hereby denied for failure of the majority of the circuit judges who are in regular active service to vote in favor of the request for rehearing en banc.

LAY, Chief Judge, with whom HEANEY, McMILLIAN and ARNOLD, Circuit Judges, join, dissenting.

We respectfully dissent from the denial of a rehearing en banc. This case presents a question of exceptional importance that can have unfortunate repercussions throughout the state prison systems in this country.

This case has a lengthy record and, as Senior Judge Bright pointed out in his dissent to the majority's opinion, there is ample evidence in that record to support Judge O'Brien's findings of fact below. *See Goff v. Nix*, 803 F.2d 358, 372–75 (8th Cir.1986) (Bright, J., dissenting). To reject those findings is contrary to the principles set out in *Anderson v. City of Bessemer City*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Selective reliance on *Anderson v. City of Bessemer City* converts the clearly erroneous rule into a doctrine of convenience for the reviewing court. The clearly erroneous standard of review was never intended to be applied only in some cases but not in others.

Further, this court's approval of the routine use of random body cavity searches conducted at the complete discretion of the prison officials and guards, without any requirement of reasonable suspicion, is inconsistent with an inmate's constitutional right to humane treatment. To condone these demeaning inspections without proof that such searches are necessary to institutional security is a throwback to the maltreatment of prisoners in earlier times. The state urges that it cannot require that routine visual anal searches be conducted in only those situations where reasonable suspicion warrants such a procedure because it cannot trust its guards to apply their discretion in a fair and equitable manner. This is untenable logic, and an unprecedented reason for not applying the well-established principles of the Fourth

Amendment. The state may as well argue that because police officers have trouble knowing when there is probable cause to search, they should be allowed to conduct random searches at all times of all premises.

Moreover, random body cavity searches are not utilized in our federal prison system; they are similarly unnecessary in our state institutions. The federal prison regulations which provide for visual searches only upon reasonable belief or suspicion read, in part:

(b) Visual search—a visual inspection of all body surfaces and body cavities.

(1) Staff may conduct a visual search where there is *reasonable belief* that contraband may be concealed on the person, or a good opportunity for concealment has occured. For example, placement in a special housing unit * * * or reentry into an institution after contact with the public (after a community trip or after a "contact" visit in a visiting room) is sufficient to justify a visual search. The visual search shall be made in a manner designed to assure as much privacy to the inmate as practicable.

28 C.F.R. § 552.11(b)(1) (1986) (emphasis added). If such a restricted use of visual body cavity searches is made in the federal penitentiaries without encountering security problems, it is reasonable to conclude that similar narrowly tailored security measures are sufficient in the state prison setting.

The Supreme Court's decisions in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and *Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), seem to have encouraged some judges to believe that the former practice of giving "hands-off" deference to state prison officials should be resurrected. Such a belief misreads those decisions and totally ignores the history of our prison systems, which clearly demonstrates that human nature often leads people in positions of authority to abuse their power. This is especially true in the state penitentiary setting. *See, e.g., Hutto v.*

*Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), and cases cited therein. We here express the hope that the Supreme Court will aid our understanding of those decisions and provide guidance to the lower courts by explaining that deference to the decisions of corrections officers does not mean that judges should close their ears and eyes to the inhumane and abusive treatment of prisoners wherever it occurs.

Because the majority decision is clearly wrong both in its interpretation of the law and in its application of that law to the facts, we must dissent from the vote to deny rehearing en banc of this case.